IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **BRETT L. SHARP,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | Case No. 21-cv-787-NJR |
| ) | |
| ) | |
| **ANTHONY WELLS, S. BENTON,** ) | |
| **MAILROOM STAFF,** ) | |
| ) | |
| **Defendants.** ) | |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Brett L. Sharp, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Menard Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. In his Second Amended Complaint (Doc. 15), Sharp alleges Defendants implemented unconstitutional policies denying him access to publications. He asserts claims against the defendants under the First and Fourteenth Amendments.

This case is now before the Court for preliminary review of the Amended Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

1

## The Amended Complaint

In his Second Amended Complaint, Sharp makes the following allegations: officials at IDOC created and implemented policies which deny inmates access to publications of a sexual nature, including books, magazines, and photos (Doc. 15, p. 6). Any publication that mailroom staff deem "sexually offensive" is rejected. Further, all legal books, educational books, and bibles that weigh over five pounds are rejected (*Id.*). Sharp believes that the mailroom refusal slip is excessive and allows mailroom staff to deny a publication for any reason.

Sharp alleges that on November 22, 2011, and again on September 1, 2015, a bulletin was issued to inmates regarding access to photos (Doc. 15, p. 11). The bulletin informed inmates that they were restricted from receiving any photos that the mailroom staff or warden deemed to be inappropriate and/or showed any form of nudity (*Id.*). Sharp alleges that the warden makes the final decision as to items that are rejected by mailroom staff (*Id.*). Sharp argues that the bulletin was overbroad allowing the mailroom to send back a number of items. Books weighing over five pounds are sent to family members, who then weigh the books and determine that they are not over the weight limit (*Id.* at p. 12).

On July 15, 2021, the mailroom denied Sharp a mail order of 30 photos because they were unable to verify the age of the model (*Id.* at p. 13). They were also rejected because the photos showed nudity (*Id.*). Sharp believes the documents were in full compliance with federal law, specifically 18 U.S.C. § 2257 and 28 C.F.R. 75, and did not show nudity. He also has approximately 60 photos of the same model in his possession.

Sharp believes the photos were improperly rejected because publications can only be rejected if they are detrimental to the security, good order, and discipline of the institution (*Id*. at p. 14). He acknowledges that the bulletin did not contain Warden Wells's signature but that he enforces the policies, along with the mailroom staff and the grievance officer (*Id*. at p. 14). He believes that prison policies should be changed in order to "coincide with the changing date and time[s]" (*Id*. at p. 15).

## Discussion

Based on the allegations in the Second Amended Complaint, the Court designates the following count:

> **Count 1:** **First Amendment claim against Anthony Wells, S. Benton, and Mailroom Staff for implementing and enforcing a policy that led to the rejection of Sharp's photographs on July 15, 2021.**

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Amended Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[1] **This includes any claims which arise under the Fourteenth Amendment as alleged by Sharp.**

---

[1] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

Although Sharp takes issue with the prison's entire mail policy, including a policy regarding the weight of publications, he only identifies one instance where he was denied access to publications. He only alleges that he was denied access to thirty photos in July 2021 because the mailroom staff could not verify the age of the model. Sharp mentions a policy denying publications over five pounds but only cites to instances where another inmate was denied materials for being over the weight limit. There are no instances of Sharp being denied materials over the weight limit.[2] As to the instance where Sharp's photographs were rejected for either containing nudity or because mailroom staff were unable to verify the age of the model, officials have "great latitude" in limiting a prisoner's reading materials. *Payton v. Cannon*, 806 F.3d 1109, 1110 (7th Cir. 2015) (quoting *Mays v. Springborn*, 575 F.3d 643, 649 (7th Cir. 2009). When "a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). But "[t]he arbitrary denial of access to published materials violates an inmate's first amendment rights." *Antonelli v. Sheahan*, 81 F.3d 1422, 1433 (7th Cir. 1996). Sharp's photographs were rejected because staff could not verify the age of the model. Sharp argues, however, that he has numerous photographs of the same model, that staff were aware the pictures were in compliance with federal law, and that the mailroom staff misapplied the policy. He

---

[2] In dismissing his First Amended Complaint, the Court noted that Sharp alleged that he had books which were rejected for being over the weight limit and could possibly state a viable First Amendment claim for access to those materials. A review of that complaint and accompanying exhibits demonstrate that Sharp was referencing the denial of publications sent to Justin Baker (Doc. 10, pp. 76-79). Sharp does not cite to any instance where he had publications rejected due to the weight of the publication.

also takes issue with the policy itself, arguing that it provides too much discretion to the mailroom staff. Preventing the introduction of a nude photographs and photographs of underage models into the prison environment appears to comport with a legitimate penological interest. But further factual development is required to determine whether the denial of Sharp's photographs in this instance, and the implementation of the policy at the prison, violated Sharp's First Amendment rights.

At this time, Sharp states a valid First Amendment claim against Wells who Sharp alleges implemented and, ultimately, enforced the mailroom policy.

But Sharp fails to state a claim against S. Benton, a grievance officer. He only states that the warden's policies empowered staff and the grievance officer. To the extent Benton denied any of Sharp's grievances, however, the simple denial of a grievance by those not personally involved in the underlying constitutional violation does not state a claim. *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011) ("[T]he alleged mishandling of [a prisoner's] grievance by persons who otherwise did not cause or participate in the underlying conduct states no claim."); *George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007).

Further, Sharp's allegations against "mailroom staff" also fail to state a claim. The reference to "mailroom staff" is too vague to state a claim in this case. Although Sharp may certainly bring claims against unknown defendants, he must identify the John Does with some specificity ("John Doe #1, John Doe #2, etc.). His referral to "mailroom staff" is too generic and does not even provide notice as to the number of staff involved.

**Disposition**

For the reasons stated above, Count 1 shall only proceed against Anthony Wells. S. Benton and "mailroom staff" are **DISMISSED without prejudice**.

The Clerk of Court shall prepare for Defendant Anthony Wells: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Second Amended Complaint, and this Memorandum and Order to the defendant's place of employment as identified by Sharp. If defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on defendant, and the Court will require defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Sharp, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendant is **ORDERED** to timely file an appropriate responsive pleading to the Amended Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section 1997e(g). **Pursuant to Administrative Order No. 244, Defendant need only respond to the issues stated in this Merit Review Order**.

If judgment is rendered against Sharp, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Sharp is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **seven days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

DATED:  November 23, 2022

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**

### Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your Second Amended Complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Amended Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**